and number 12-1899 Dash v. Mayweather. Good morning, Your Honors. May it please the Court. My name is Bill McKinnon. I'm here along with John Felder and Tom Moses representing plaintiff Anthony Dash in this matter. Your Honors, as I'm sure you're aware, Mr. Dash composed a piece of rap music. It didn't have any lyrics. He wrote it in 2005. The boxer Floyd Mayweather then added obscene lyrics to it and created a rap song called Yep, which he had a music video that he made. He then used this video, he used this song in Wrestlemania 24, which was a World Wrestling Entertainment production in 2008, and he used it as his entrance music. And then again in 2009 in a promotional TV show called World Wrestling Raw, he used the music again. The District Court ruled in this matter that despite the fact that Mr. Mayweather, with the infringing music on it, made money off a pay-per-view broadcast with the infringing music on it, sold tickets to the live event at which the infringing music was played and which Mr. Mayweather was paid an enormous amount of sum for his performance, including this music, we had not established the causal connection required under 17 U.S.C. 504B. This was clear error. It's contrary to the law of this circuit and every other circuit in the United States. Well, what would you say the causal connection is? The causal connection, Your Honor, is that directly infringing products were sold, that no court anywhere in the United States has required more in what's called a direct infringement case. And that's not a distinction that's been formally made in this circuit. In the Bouchot case, the court does cite Mackey from the Ninth Circuit, which specifies it's an indirect infringement analysis. The difference being direct infringement means I sell a book with an infringing picture or I sell a DVD with infringing music, whereas indirect infringement means I'm using the infringing product to sell something else. I'm playing the infringing music in an ad trying to sell a Mercedes. Or in the Mackey case, which this court cited in Bouchot, it was a symphony brochure that had an infringing picture, but the point of it wasn't to sell the brochure. The point was to sell season's tickets to the symphony. That's an indirect infringement case. In a direct infringement case like this where the actual product sold by the defendants is infringing, has the infringing content on it, then all you need to show is income is received. And we would say that's what the Bonner Court said. That was the clarification from the Bonner Court. So, like I said, very briefly, Mr. Mayweather's performance as part of this World Wrestling WrestleMania 24 was about 24 minutes. He was actually out there doing his thing. Of that, 5 minutes and 12 seconds our client's music was playing. This was without any kind of compensation, without any kind of permission. What's the relevance of that? Only that this wasn't like... That ratio? Probably nothing for this argument, Your Honor. We certainly hope that Your Honors will reverse this decision and we'll go back and that will be part of the argument of the trial. Because, as Your Honors are aware, all we're talking about is a burden-shifting analysis to get to the jury. The system Congress set up in 17504 is, in a copyright infringement case, all we have to show is... We don't have to show profits. All we have to show is there are gross revenues that accrue to the defendants and there's some causal connection, and then the burden shifts the defendants then to show... I'm going to go back to Judge Stacker's question. What's the causal connection here? The causal connection is they made money off selling a DVD that had infringing content on it. Just like the building in Bonner. One of the defendants in Bonner was the builder. He didn't even get money from the rent. He got money for building the infringing building, but the court said all you need to show is the design of the building in Bonner is infringing. Money came in as a result of that infringing design. That's the causal connection. That's the key. You said, as a result. Where's the, as the result here? Okay, Your Honor, I'm not... There was no evidence in Bonner that the people rented the building because of the architecture. I mean, all the court said is money came in, rent came in on this building, the design infringed. In fact, the language... They specifically said that was a misinterpretation of the Bouchot case to require evidence that people rented the building because of the infringing design. The because of does not, it does not exist. All you have to show is money came in, and the money came in on a product that was infringing. That's what the Bonner case says. What's the significance of the fact that the copyrighted... We have two separate things in other words. We have the copyrighted, the beat, but there were lyrics added to it. What's the significance of the fact that you have those two separate items, only one of which was copyrighted? None, Your Honor, in this case. I mean, that's, I mean, he did not have authorization to use the beat, the music, and the copyright law analysis, there is no significance of that. So there's no significance to that on the question that you've just addressed about the, where's the connection, where's... No, Your Honor, there's no connection. What it does come in is at the jury trial, defendants will be able to argue and rebuttal. They will be able, they will try to attribute the profits they made to other factors. They can say the profits in WrestleMania are due to the fancy costumes or due to the promotional materials we put out, or due to the lyrics. They can argue the profits we made are due to the lyrics and not the music. But as to whether it's infringing, the fact that our client wrote the music and not the lyrics does not matter in this analysis. The fact, it is a directly infringing product. The DVD they sold has our clients' music on it, and they did not have permission... What would be the jury instruction? What? How would I instruct the jury in this case? Your Honor, I... What would I say to the jury? Okay. Your Honor, that actually, the correct jury instruction I would posit is from Judge Widener's dissent in the Bouchot case, where that was, he dissented over the issue of the jury instruction, and he wanted, and I don't remember the name of the case, but he cites a case in his dissent, and he says the proper instruction is the burden shifts, and your Honor, I can read it to you if you want. So you don't have to prove anything other than an infringing use? That's your position? That's correct, and that monies were received as a part of the infringing use. Okay, but how do I, when you say the burden shifts, I'm not sure I know exactly what that means. Well, under the statute, your Honor, all we have to show is gross revenue. We don't even have to show there's profit. We show there's gross revenue and there's an infringing item. At that point, the defendants may then argue that the profits, because in the end, we only get profits, we don't get gross revenue. So they can, for the first, they can argue there were expenses, that, you know, we'll just say, you know, if there's $100 of gross revenue, $99 of it was expenses, and there's only $1 profit. They can argue that, or they can, and they can in addition argue that their profit is attributable to other sources. They are free to argue that to the jury, but at this point, Judge Anderson ruled we didn't even meet our obligation to shift the burden, and that's clearly incorrect under the law, I would argue, Your Honor. Are you going to spend any time on your alternative argument? I'm sorry, which alternative argument, Your Honor? Are you going to move from profit or actual damages? Well, the actual damages, Your Honor, are frankly not a particularly important part of this case. I didn't think so either, but... Go ahead. No, go ahead. I mean, Your Honor, the actual damages are, the amount is small. I mean, we think Judge Anderson is clearly wrong on the law. His ruling was there are no actual damages, that's ludicrous. I mean, it may be one cent, the song, but Mr. Dash wrote... Would you bring a copyright infringement case if you thought you could only get one cent? Certainly not, Your Honor. But nevertheless, the ruling is legally incorrect. What about $250? Unlikely, Your Honor. But Judge Anderson was incorrect to say the song had no value. We had an expert opinion, and the jury's more than happy to say we don't believe that expert, he's crazy. Certainly our client didn't have a long history of selling music to World Wrestling, but to say the song had no value whatsoever, there's nothing in the record to support that. Further, Mr. Mayweather could have picked any piece of music he wanted, and in fact, Defendant World Wrestling had selected a song by the rapper 50 Cent, they had it ready to go. And 24 hours before the show, Mayweather said, don't use 50 Cent's song, I like this better, and he gave them the song with our guy's music. So Mr. Mayweather clearly valued it more than 50 Cent's song. But I think, obviously, Your Honor, the crux of the case is the profit damages, because whatever the actual damages value, and we do contend there's an actual damages amount, it's going to be small. We don't argue that. So, assuming hypothetically, the profit for the live performance, the DVDs, all of that, hypothetically, let's say the profit is $5 million. So you would say a proper jury instruction would be something along the lines of, ladies and gentlemen of the jury, watch the DVD, take as a given that the profit was $5 million, and you decide how much of that $5 million the plaintiff should get. Because that's essentially it. Not similarly, I mean, as... What did I leave out? The more specific, that it is the burden, we don't even have to show the profit, we present to the jury the gross revenue. I'm positing $5 million in profit. And then the correct jury instruction, Your Honor, it is now the burden of the defendants... To prove what? To prove that that profit is attributable to things other than our song. They have the burden. That's the burden shift. We don't have to prove the $5 million is due to our song, or that some portion of it is due to our song. They have to prove it's not due to the song. I'm sorry. No, please, go ahead. But you've already stipulated that you can adduce no evidence that playing this song increased any of the WWE revenue streams. That's definitely correct, Your Honor. So why does that not completely defeat your argument? Well, that's what the Bonner Court said. I mean, that argument, which the defendants make, was tried in Bonner and rejected by this court. Because what they're basically saying, and what Judge Anderson said, which we think is completely wrong, is we have to show that additional tickets were sold. That if it wasn't for our... They sold 10 million tickets, but they would have only sold 9 million without the music that our client wrote. That is not what we're required to show. Because that's the Bonner case. In Bonner, the defendants argued, they said, the architect has to show the reason people rented this property was because of his architecture. Or that they rented 500 more square feet due to his fancy building design. This court said that is not required. All you have to show is the building infringes and money comes in from the building. That's the Bonner case. Plus, I mean, all the cases from the other circuits go that way as well. I mean, I don't know if Your Honors... I mean, this is... This court would be the first court to ever hold that selling a directly infringing product is not sufficient. I mean, the Eighth Circuit, and this is the case... Your Honors, we have the Berg case, and the Wood case, actually, was the Eighth Circuit case, which was the one where a photographer had nine photos in an elementary school textbook. And they made the exact same argument, and that court actually said establishing the causal nexus does not require putting a buyer on the stand to testify they bought the product because of the infringing portion. You just don't have to show that. That's an impossible standard to meet. What did Bonner do with respect to the court's Walker decision from 1994 that said that the fact finder has to focus not on the profit of the work overall, but on the profit that the infringement contributes? Your Honor... What's the evidence of that? Well, the way the Bonner court handled that, I believe, Your Honor, was to point out there's only one revenue stream. There's not... I mean, you don't rent the building and charge the tenant this many dollars for the architecture and this many dollars for the square footage and that many dollars for the heating. It's a single profit stream. And in the same way, in this case, the profit stream for the DVDs, for example, is a single unitary profit stream that's not broken up by this much money for the costumes, that much money for the scenery. The same with the pay-per-view or the ticket. You buy the ticket for WrestleMania. You don't... The ticket, that's a unitary profit stream that's not split up between this wrestler and that wrestler or the music and the light show. It's a single profit stream. Under Bonner, you don't split that up. You can't split it up. But the only way... Again, defendants at trial can try to make that argument. They can bring an expert in to say, you know, this music is not a big deal. No one cares about the music. That's their right at trial. But they don't get to throw us out on summary judgment by saying we haven't established a causal connection when they sold the product with our music in it that infringed.  You've reserved time for rebuttals. Thank you, Your Honor. J.T. Good morning, Your Honors. I am Mark Tratos for Mayweather Promotions and Floyd Mayweather. I'm going to take five minutes this morning and address the issues as they relate directly to Floyd Mayweather and Mayweather Promotions. Mr. McDivitt will address the issues relative to WWE. Your Honor, this court has previously set forth the affirmative obligation of a trial judge is to essentially prevent factually unsupportable claims and defenses from proceeding to trial. That's the obligation that trial court has. We submit Judge Anderson did exactly that in this case. One of the principal purposes for summary judgment is to isolate and dispose of factually unsupportable claims. And that is what Judge Anderson did in this instance. Specifically with respect to Floyd Mayweather, the facts are undisputed that a contract that he entered more than two months before the appearance clearly was directed at his status as a celebrity, being able to go on to talk shows and promote the World Wrestling Event, WrestleMania 24. Specifically, he was compensated exactly for that. The undisputed testimony of two officials of WWE was he was paid only for his appearances on the various television programs that promoted World Wrestling 24 and for the event itself. There was nothing in the contract that ever addressed the issue of any kind of music. He was not compensated for music and the undisputed testimony is only that he was paid for everything other than music. So there is no causal connection that can be established by the plaintiff in this instance that would suggest somehow that the music, that infringement, was contributory to any of the income that Mayweather received. If it doesn't contribute to any of the income, it can't contribute to any of the profits. Properly disposing, therefore, of this case. I would simply... Does opposing counsel suggest that where there's a unitary profit stream, you don't have to get into that question at all? That's the suggestion here. Why is that not the case? That is essentially a misreading of the case law. 504B requires that there must be an attribution of some sort that causes an enhancement. If you look at what we said in Beshad in this circuit, the Beshad case basically says essentially there has to be enhancement. In this instance, if you look at what was happening in that Ravens case, the court says those fees that were fixed and immutable cannot be essentially attributed to the infringement. Why wasn't it an issue in Bonner, then? What was different about Bonner? What was different about Bonner was a but-for standard. The reasoning of the court was simply like this. Lease income had to come from a building. The building had to come from the architectural drawings. Therefore, but for the leases and but for the building, there would be no income. Therefore, that was the connection. That is not the instance here because there was no obligation on Mayweather's part to provide music. There was no obligation on Mayweather's part to come forward with music. Therefore, the compensation that he received had nothing to do with the alleged infringement. It is completely separate. Lacking any association with the income, there can be no profitable connection to it. Let me address very briefly, if you would, the issue of actual damages because I think this is actually really important as well. It's worth something. Yes. Is it? What was the evidence that was submitted before? Even Kautz said maybe a penny. Maybe a penny, okay. Well, the evidence that was submitted before the court and Judge Anderson had to deal with was simply these three things. One, there was essentially nothing in the tax returns that had ever been presented that suggested he had ever made any money off of income. There was no evidence that was set forth that he had ever leased any of his beats or sold any of his beats or made money from any of his beats. Importantly, the expert does not articulate that it had a value. The expert says, based upon what other artists got paid, the maximal value that could potentially be proven is this. But that's not coming forward with evidence. That's not setting the evidence. Well, there's evidence that it was used. There is evidence that it was used. And the underlying question then becomes, is that in fact sufficient to be able to say it's more than speculative? Clearly, the court doesn't want speculation. Does it have to be sufficient all by itself? That is the opinion of the expert or can, to survive summary judgment, can you look to the combination of the statement from the expert and the testimony, the evidence,  the 3,000 licensing fee that was paid? Can you combine that to get past the summary judgment standard when you're viewing the evidence in the light most favorable to the plaintiff? Judge Davis, I don't believe you can for this reason. Essentially, what Judge Anderson did in his analysis was to simply say, you're mixing apples and oranges. The only evidence that the expert looked at were for artists who had significant reputations. Red Hot Chili Peppers, Snoop Dogg. And he says, when you simply say we can get similar fees for this, you're essentially not presenting evidence that's credible to any jury. No jury can accept this, and therefore you can go beyond that issue and go to summary judgment. I think that's what he did. I'm out of time, Your Honor. Thank you very much. Good morning, Your Honor. Please support. I'm Jerry McDivitt. I represent the WWE. Your Honors, I postulate that Judge Anderson, who is a very... I've never appeared before him before, and I probably will never again. He's a very seasoned, wise judge who handled this case in textbook fashion in full accordance with Fourth Circuit law at every step of the way. The trial court's opinion did exactly what this circuit has said to do in a long line of cases where there are multiple revenue streams associated with an alleged infringement, not a single revenue stream, as was the case that they rely on. What the judge did, picking up on what Judge Davis pointed out, is the Walker case instructs trial judges that if the infringement, which here is the playing of the Epsom, is a small part of a much larger work that focuses only on the profit that the infringement contributes. Walker adopts a rule of direct causation. The infringement must directly cause revenues to be made. It would not otherwise be made. That's the rule of Walker. Does Bonner create an exception? No, I think... In fact, Bonner, Your Honor, actually reaffirmed Bouchot. And in later cases, the circuit has reconciled Bonner and Bouchot, saying that the concern in Bouchot was that the plaintiff there was going after revenue streams that didn't seem to have much to do at all with the infringement. Whereas in the Bonner case, in fact, the distinction that the court made in the Bonner case was there you had a single revenue stream that was designed exclusively under copyright. All the monies came exclusively from it. Nobody can contend Wrestlemania was designed around the Tony Gunsby, which nobody ever, frankly, ever heard of before or since. I mean, Wrestlemania is the Super Bowl of what WWE does. Continuing with what Fourth Circuit law requires and what the judge did here is once you isolate the revenue streams, you parse the revenue streams, and you require a causal connection between the infringement and the particular revenue stream that you're focusing on, whether it be ticket sales, pay-per-views, or whatever, and you look to see if there is a causal connection between the infringement and that revenue stream. Every Fourth Circuit case, Walker, Bouchard, Bonner, Phoenix, Reservation, Quantum Systems, every case ever announced in the circuit follows the rule that Judge Anderson adopted. What Judge Anderson had before him on the summary judgment was reams of evidence that we submitted just as stated in Bouchard as a proper procedure to do, negating any idea that the playing of this yap late into the WrestleMania show, long after tickets had already been bought, long after pay-per-views had already been bought, could have had any impact on any of those revenue streams. We submitted contracts. We submitted all kinds of documentation. The important point is this plaintiff did not put one fact in to prove causation. I mean, nothing. Not on any of the revenue streams that we were talking about. They did not dispute any of the evidence that we put in under Rule 56, which under the changes to Rule 56, the failure to dispute those means Judge Anderson could take those as true. Some of those facts were the ticket revenue, for example, WrestleMania. It was sold out before we even signed Floyd Mayweather to a contract, let alone yap played late in the show. Same is true for the pay-per-view. I mean, you buy the pay-per-view to watch the whole show. This alleged infringement of the playing of yap was late into the event. If you look at the video, you can see the stands are already full of people. There is no way that caused any consumer to go buy a ticket or purchase the pay-per-view. They'd already done that. We showed that there had been no advanced use of this yap song. In fact, they stipulated to it that the first and only time that yap played in WrestleMania, it wasn't before WrestleMania. There wasn't any hype with it. There wasn't any promotion with it. It played when he entered the ring a couple hours into the show. That's it. That's the only time it played. The event program, which is another one of the revenue streams that we disclosed, there's no mention of yap. It's not anywhere in there. It just talks about matches and everything, but yap, because it was pointed out, it wasn't even decided that he would use this song until the night before WrestleMania. The yap song itself has never been directly sold. It wasn't put on iTunes. It wasn't sold in any way, shape, fashion, or form. It was just what was used for Mr. Mayweather to enter the ring. And frankly, we would have made the same amount of money if Abbey Road had played. And they have stipulated to that effect. The merchandise, which was another line of revenue at WrestleMania. T-shirts and the like of the talent and whatnot that you buy out in the lobby. None of that was yap or music related. With respect to the Raw program that they have not really talked too much about, that is in case, I never know if most judges, Your Honor, watch wrestling or are familiar with it. I guess everybody's... I grew up with it, I'll admit that much. All right. Most judges, Your Honor, tell me they look at it when they're flipping through the channels. But in any event, the Raw show is our Monday night program. We put in evidence that the contract, the biggest portion of the revenue stream for our Raw show is a pre-existing contract that we have with the USA Network. The rights fee does not fluctuate based on program content or ratings or anything. It was fixed and immutable within the meaning of the Bouchot case. Couldn't be caused by the infringement. That is excluded under Bouchot. And their expert had no theory even that he could present on any kind of profit claim for Raw. And he admitted he didn't have any. What they pursued there and here is truly unprecedented. It is a theory that they are entitled to apportionment of all the revenue streams from WrestleMania despite a stipulation that the infringement didn't produce any of that revenue. That has never been the law. Not here. And in fact, it's been rejected by this court in the Quantum Systems case and was rejected in the Mackey case in the Ninth Circuit, which they talk about. It's been rejected everywhere. You have to show causation as part of your burden of proof. It is just legally dead wrong to say, as counsel did, that all you have to show is infringement and revenue. That has been rejected by this court. It's been rejected by every court. Every court puts a causation burden on the plaintiff to get over the 504 hurdle. We had Mr. Dash's admission, and this again is before Judge Anderson, that the plaintiff, yep, did not create any revenue stream. We have their stipulation that is devastating to them. I frankly don't understand what more we could offer to negate causation than the stipulation where they stipulate they have no evidence that the playing of the yep song, quote, increased any of the WWE revenue stream set forth above in paragraph five and six, which is all our revenue streams, beyond that which would have existed without the song yep. Another part of the stipulation says they have no evidence that WWE received any additional revenue beyond that which would have existed without the song yep in any of the revenue streams for WrestleMania or the Raw show. If statutory damages were in play here, what would be the recovery? What would be the measure of recovery, I guess is my question. Each DVD? No, the statutory damage provision, which doesn't apply here, Your Honor. Right, doesn't apply. He didn't register his copyright. I'm just curious. What would it be? It gives the trial judge pretty wide discretion. If you're in the low end where you have an innocent infringement, like here, we never heard of Mr. Dash or TGB until we were sued. But would each DVD trigger a separate statutory... No, I think statutory damages isn't calculated that way, Your Honor. He just would look at... Usually, it's an election. When you can't prove actual damages or profit damages, you take that and the judge sort of takes into account whether it was a willful, deliberate infringement. If so, he can give quite a substantial, large amount of money to an innocent one with a very little amount of money. I guess my question is would each DVD constitute an infringing use? I don't think the DVDs... I don't want to distract you from your argument. This case is not about statutory damages. And with respect to the DVDs, again, that theory that they're presenting here, they've been flopping all over the place throughout this entire case what their theory is. It wasn't even presented to the judge below. They presented no causation theory on a DVD below. The expert report was very simple. There are seven revenue streams of WrestleMania, and we want a part of all of them. Even though we have stipulated that none of this caused any of the revenue that any of those revenue streams made. And that's the theory that the judge passed on, and that's the theory that the judge rejected. So if they have an evidentiary burden to show causation, and this circuit has clearly, and every other circuit says, you have a burden to show causation from the infringement to revenues, in the words of the statute, attributable to the infringement. If they have a burden to come forward with evidence to that effect, they completely failed to do it. They produced none. And they took issue with our talk about enhanced damages or enhanced revenues. This is exactly what the Bouchot court said about the very reason we are here. Once the defendants had carried their initial burden of demonstrating the absence of any genuine issue of material fact regarding the attributability of the contested revenues, Bouchot could survive the motion for summary judgment only by inducing specific non-speculative evidence supporting the existence of a link between the infringement and a defendant's supposedly enhanced revenues because Bouchot failed to make such a showing the court properly awarded summary judgment to the defendants. That is precisely what happened here. They offered no evidence. I mean nothing to show causation with respect to any of the revenue streams including the DVD which they now focus on. And if I could just spend a minute. The DVD is packaged in a way that doesn't even advertise yet. You don't see it on the cover. You don't even know it's in there. You only hear it if you buy the DVD and you put it in. It can't possibly be driving consumer behavior to buy it which is the quid pro quo of what the court has said, look for. Can it influence consumer behavior? Before your time expires to this actual interesting actual damages question of whether or not what the expert said would have earned a maximal sum of $3,000 for use of his musical composition. Whether that taken in conjunction with the actual licensing fees that were paid was enough to get plaintiff passed summary judgment and create a genuine issue of material fact viewing the evidence in the light most favorable to the plaintiff. I submit not, your honor, there's one other reason why it's not. The actual damages focus on the plaintiff's loss. He has to establish his work has a fair market value. That's done by showing his work has fair market value. The only evidence he offered here of fair market value was that Snoop Dogg and Chili Peppers and others have fair market value. These commercially successful artists. The judge properly excluded that relying on the Frank case and other cases that we cited to him where it's not the fair market value of other people that matters. It's the fair market value of your work that matters and he offered none. Suppose the expert had said somewhere between $1 and $3,000. Well, he didn't prove it was worth $1. We put in evidence, for example, Mr. Dash has been trying to sell these beats on the internet for like $19. Can't sell any of them. I mean, the tax returns don't show any income ever from musical composition. Your Honor, I see my time is almost up. I would state this. While I think much of my friend Mr. McKinnon's argument is a lot of hyperbole about no case this, no case that, I can tell you there is no case anywhere where a copyright plaintiff has walked into court stipulated that he couldn't prove any economic impact whatsoever associated with the infringement and then get the cut of the revenues, of all the revenue streams which he admits have nothing to do with the infringement. That is the radical proposition that's being advanced here. Nothing that what Judge Anderson did. What Judge Anderson did was textbook, frankly, on how you're supposed to handle these kind of cases. Thank you, Your Honor. Thank you, Mr. McKinnon. Thank you, Your Honor. First, I do need to correct my colleague. We never stipulated that our song did not contribute to the profit damages. What we stipulated to you was very precise. That we had no evidence that additional revenues came in because of the song. That is a hugely different proposition than saying when you sell a DVD when five minutes of it is our music that doesn't have any contribution to the product. It has five minutes. They played the music in this national pay-per-view. They sold tickets. I mean, they made an enormous amount of money off this and five minutes of it was our client's music. It absolutely... When it sold out before your client's music was even used? It was, Your Honor. So, where is the connection at all? Well, if I can flip that question around, Your Honor, their argument is because it was sold out before the music was selected, they can steal left and right. They can take the Rolling Stones. They can take Jimmy Buffett. They can play copyrighted movies during the intermission. They can steal everything they want. I think you didn't overstate... I don't think it's overstating at all, Your Honor. No, I think this case involved satisfaction. We'd have a different case. I don't think it is at all. It's not a case that gets brought by the Rolling Stones. I respectfully disagree, Your Honor. Their argument is because the concert, as Judge Thacker put it out, the WrestleMania was sold out prior to the selection of music, we cannot recover a profit damage. That's one of their arguments, period. Many arguments.  patently untrue, Your Honor. Tell us why Judge Thacker's... I don't understand your answer to Judge Thacker's question. My understanding is that interprets copyright law in such a manner that in this instance they could steal whatever music, whatever movies, anything they wanted because the tickets were already sold. Basically, their theory is unless a ticket purchaser knows in advance when they purchase a ticket what infringing conduct is going to be played, that no profit damages are not recoverable. That's their theory. I don't think their argument goes that far. It has to, Your Honor, because that's the facts of this case. Their argument is as Mr. McDevitt just stated, because the music was selected after the tickets were sold, we have no case. That was his argument. I'm apologizing, Your Honor. What evidence do you have of any genuine issue of fact that there's a causal connection? I understand you argue there doesn't need to be one, but do you have any issue of fact? I don't argue there doesn't need to be one, Your Honor. Okay. To show that there's a causal connection. What are your facts to show that there's a causal connection? My argument is that if I have a CD of five of my songs and five songs from the Rolling Stones and I go sell that in Richmond at the front of the courthouse, that is a sufficient causal connection for the Rolling Stones to sue me. They don't have to have an expert come in and say, well, I bought the songs for the Rolling Stones and not Mr. McKinnon's songs. I'm selling a CD with infringing conduct. That is the causal connection and that's what the case law says. With the exception of Bouchat, which does have some bad language for us, Bonner clearly, to the extent that Bouchat says that, overrules it. It's no question. Bonner is, two years later, Bonner, that issue was raised again in Bonner and the court said that that's not required. But the revenue, your opponent's argument is the revenue stream was designed around the copyrighted, the art. How do you, and that's different. Yeah, with all due respect to my opposing counsel, that argument is absurd. I mean, that's, that's like, that's saying clever contract drafting can avoid copyright. But isn't that the only way that you make sense of Walker and Bonner at the, if I can remember, your honor, the Bonner case was not just against the landlord. The Bonner case, the other defendant was the builder in Bonner. And the builder's defense was, hey look, I didn't get any of these rents. I just got paid for hammering these nails and hiring these workers. I had nothing to do with this. And the court said, that's too bad. You built the building that was infringing that you are liable for damages, for profit damages. And the fact that the builder's contract had nothing to do with what design was selected, the court said, that's not a defense. All you have, I mean, if I could just read very briefly from the Bonner case. The Bonner court says, the district court found there was no connection here because Bonner had produced no evidence that the revenues were causally connected to the plaintiff's architectural designs. The court acknowledged that the evidence was that there was a profit stream derived from the building itself. However, the court, district court, found this evidence was not sufficient because the causal connection requirement required that it be clear the basis for the profits was the design of the building. This was a misinterpretation of Bouchet. That is the Bonner court. And that is the argument the defendants are making. They're saying, we have to prove that the tickets were bought to hear our guys' music. We don't have to prove that. All we have to prove is that, for example, one of the revenue streams is the pay-per-view. The pay-per-view was sold during that pay-per-view for 5 minutes and 12 seconds our music played. That is the causal connection. The product was sold. It contains our infringing content. That's the 7th circuit, the 8th circuit, the 9th circuit. That is a standard  but the 4th circuit. And I believe the Bonner court says it's a standard in the 4th circuit. All you have to show is the product is sold, the product infringes. And again, this doesn't mean we win. This means they get to come back to the jury and then argue the profit is attributable to some other factor. They're perfectly able to make that argument. They don't get to throw us out on summary judgment. I mean, basically, they are, I mean, if their rule stands, then wholesale copyright infringement is permitted in this circuit unless you can prove that the purchasers, the viewers, the ticket holders knew in advance what infringing product, what they were going to see. Well, is that the case where there's statutory damages then? You're saying if their argument prevails, it's Katy bar the door. It is, Your Honor. Not where statutory damages are applicable. That's correct, Your Honor, but statutory damages are minimal unless you can prove willfulness. If I could just step back for a second. Minimal where there are multiple... Your Honor, my understanding is it's not per count. It's just per, I mean, for example, it would not be per DVD. It would be, that's not the way statutory damages are calculated, but, you know, as a plaintiff, we get to elect our remedies and we, pursuing profit damages, statutory damages are not available to us because of the date of the copyright registration. In that regard, Mr. McKinnon, I don't know how the case is going to come out, but if we disagree with your strongly held view of the law, are you prepared now to abandon your claim for actual damage? Your Honor, I'm sure... Would you actually rather go back to the district court on a claim? I'm certainly not prepared at this moment to abandon that claim, Your Honor. Obviously, we'll have to meet with Mr. Dash if your Honor rules against us in the other way. Fair enough. Well,
judges: Andre M. Davis, Stephanie D. Thacker, Mark S. Davis